Next case on the calendar. Cleveland v. Mayorkas, 25-796. Good morning, and may it please the Court. My name is Shannon Murphy, and I represent the appellants, Mr. Charles Cleveland and his daughter. Your Honor, may I reserve three minutes for rebuttal? Sure. Thank you. For nearly nine years, the Cleveland family has requested the government to acknowledge the existence of a valid parent-child relationship, but the government has declined to do so under its standard articulated in Matter of Long. This brings us to one question before the Court today. Whether the government is permitted to categorically reject a group of nunk-pro-tunk adoption decrees solely because the initial petition was lodged after the age of 16. Can I stop you right there? I'm not sure that's the question for me, but you go first. Okay. Well, I bet you it's the same question. Go right ahead. So let's assume that Wong was incorrectly decided and that the government couldn't reject the I-110 simply because the adoption wasn't commenced before the age of 16. Um, that doesn't entirely resolve the case, does it? For this instance, no, it does not, Your Honor. There still needs to be a bona fide determination as to the parent-child relationship. And indeed, there's, I think there's something of a relationship between the two because the date chosen in the nunk-pro-tunk decree was the date of the Nigerian decree, correct? Yes, that's correct, Your Honor. So put aside Wong for a second. I must say I'm sympathetic to your argument about whether or not Wong should apply. But I'm still, I'm trying to now focus on the Nigerian decree. And we have something, I'm trying to sort out the record in my mind. So tell me if I'm right about this. Mr. Cleveland submits the decree to USCIS, correct? Yes. A copy of the decree. A copy of the decree, along with the Washington state adoption. Yes. But put aside the Washington state adoption for a moment. Because after all, if the Nigerian adoption was valid, we really don't need the Washington state adoption, do we? That's correct, Your Honor. To an extent, I think there is some concern with whether or not Ebery Joy would have the recognition of the Nigerian adoption in terms of being able to obtain a driver's license. Right, but that's not for... That's not for... For this purpose, correct. USCIS is not worried about driver's licenses. Correct. Okay. So we have submitted on Mr. Cleveland's side is a copy of the decree and then an affidavit from a lawyer that says this is a legitimate decree or something like that. An affidavit and a section of Nigerian laws explaining the validity of the adoption. But it's part of the affidavit, wasn't it? It was an exhibit. Yes, Your Honor. So then on the... Then what happens, and this is where I'm not clear, the government asks somebody in Nigeria to investigate. And both the USCIS and the BIA say, we've done an investigation and we don't think there's a Nigerian adoption decree. But you don't get the contents of the investigation until the district court. Correct. That is when the administrative record is produced. Okay. So that you couldn't respond in the agency proceedings to whatever evidence they had. They just told you they had evidence. That is the appellant's position, that there was evidence that it was not valid. We were told, but there was no way to properly reply without being informed of the exact type of issue with the Nigerian adoption. And now I want to get to the nature of the response and then I'll stop because I just want to make sure I understand all this. What eventually is disclosed is that an assistant registrar of the Lagos court says in sort of a confusing fashion, there's a reference to a divorce decree. There's a reference to a case number and there's a reference to a motion to amend or order to amend. And the latter two are dated in March of 2016. Yes. And I'm not clear whether or not that response says I also, it seems to say I looked for the decree and couldn't find it, but it's not clear to me whether that says I looked for it in March of 2016 or on the date that the decree is dated, which is April of 2014. Yes. So I believe that that is a very large concern in terms of the notice the agency provided. If you look at the analysis from USCIS, and I will just remind the court that it is the BIA's decision that we are primarily concerned with because the board applied a de novo review to USCIS. My problem is it had there been a full record in front of USCIS, I think the BIA could de novo review very briefly by saying. Yes, Your Honor. And that's the issue, right? If you look at that reference to the investigation that was conducted, it's a unknown member of the registrar office. There's a reference to the incorrect date, and I believe my friend on the other side will refer to it as a scriver's error. But if you're looking for a decree that's not the correct title, and that doesn't contain the date that the decree was actually entered. What's troubling is that the report from the person in Nigeria references the March 2016 date. And what we have in the record is an order of that date. And in the body of that order, it references the February 2014 adoption decree. So it would appear that they had that date. If they had the March 2016 document before them, they had the February 2014 date. And then the report says an adoption decree order was provided. The cover, there are two documents from, it appears, essentially a cover report from a consular officer. And that's where the reference to divorce decree appears, correct? Yes. But not in the report from the Nigerian official. It's not there. That's correct. And while the 2016 decree that you are referring to mentions the February 2014 decree, we can assume that the officials had it before them, but there's no evidence that it was actually considered. But they had the file number, the correct date of birth, the person's name, and the date that the adoption purportedly occurred. So they were researching with that information, assuming they just had the March 2016 order. They had all of this other information, which is correctly referenced in their report. Is that correct? That is correct. But the appellant's position is that under the regulations, the notice that was provided to the appellants was not sufficient for the appellants to respond to. Well, can I ask you another just factual question about the documents, because I found this puzzling as well? There's two declarations from the birth and the date is dated February 26, 2016. And then there's a correction later, and it doesn't seem that the dates match up. So they're correcting a date from January 22, 2015 to January 22, 2014, but the January 22, 2015 date isn't on those declarations. Those declarations are instead dated February 25, 2016. Can you explain those dates, or are there different documents that we don't have in the record that explain those dates? I do not believe that there are any other documents in the record to explain those dates. If they were, we would have asked that USCIS would have produced them if they found some type of records to support those dates that we did not have possession to. I will share with the court that I think the really big concern here is that even if we put the Nigerian adoption aside, there is still a valid state court adoption that should be considered for purposes of the I-1. That was going to be my next question. So if you've answered, Judge Beatty, I want to get... And I'll just wait. You're waiting? I am waiting. Go right ahead. So what if there is no valid Nigerian adoption? And I'm not blaming anybody. It's assumed that Mr. Cleveland hired somebody to do it, and it didn't happen. What do we do? So even if there is no valid Nigerian adoption due to some unbeknownst error, there was evidence for the Washington state court to enter a order of adoption that NGPRO tunked the date to February 20, 2014. There were... Well, I know there was evidence that there was a relationship, like a parent-child relationship, before then. What I'm not clear about is what Washington law provides on that point. When I look at what little we have from the Washington-Spokane court, it seems to say you submitted the adoption decree from Nigeria and said it should be NGPRO tunked to that date. If it wasn't, do we really have a state order that validates the adoptive relationship at an earlier point in time? Or was it simply based on the existence of the Nigerian decree? Well, Your Honor, I think if you look to the NGPRO tunk decree, if we look to that at docket entry 8.1 on page 109 to 110, the order does say that it expressly considered evidence and heard testimony. And that's an important consideration. The records are sealed on that order. It also says that the records are sealed unless good cause is shown. So under that standard, though, the court did consider factual evidence and found it sufficient to find a child-parent relationship existed in February of 2014. See, I'm not sure they did. That's why I'm pushing back on you a little. I don't know what Washington law is on this topic. And nobody's given us any citation to Washington law. But it does seem to me on this record, the district, the superior court or the trial judge in the state quite reasonably said, well, you've submitted a Nigerian decree. And then the parent-child relationship really began then. And I'm going to backdate this to then. Assuming that Wong is not applicable, what are we to do if we find out one of the premises of that was wrong? I think that goes to the heart of the issue before this court is that we can't pass the first hurdle of whether or not the agency can accept a non-proton decree because there is an ability for the agency to make a determination about the nature of the non-proton decree. So they can make that determination in your case. They can apply a bona fide determination to the relationship. And maybe if the relationship see, that's my problem. The statute says adoption. It doesn't say a parent-child relationship. So they can apply a bona fide investigation, but only as to whether or not an adoption occurred on this earlier date. And I don't know whether under Washington law, an adoption would have occurred on that earlier date, absent the decree. Is there any, can either side help us on that? I think if we look to Brown versus Department of Homeland Security, it provides some guidance. In that case, we also dealt with Washington law and a adoption decree that was non-proton under Washington law. And very important there, the federal judge for the district court in the Western district of Washington said that the board could not categorically reject this non-proton order merely because Washington law did not provide a statutory basis for non-proton at adoption decree because it was within the inherent power of the state court who has control of domestic relationships and has the ability to determine whether those domestic relationships exist. I'm sorry. I want to follow up on what Judge Horwitz is asking you because it's, to me, it's pretty much the critical issue in the case. And I'm looking at, it said ER 46. It starts there. There's the findings of the fact and conclusions of the law from the state court. Yes. And on the second page, ER 47, there are recitations of facts, including that the birth mother and birth father have relinquished the care and custody of Everie Joy, as well as consenting to the adoption. And subsequent adoption proceedings took place. And also the Cleveland's had been through a guardianship proceeding. So it resets out all these things. But it seems when you read this, that this was significant, that it was significant that there was a relinquishment of parental rights. There wasn't a claim that she was an orphan. The parents were deceased. They were living parents. And that there was a Nigerian adoption. And this is all laid out in probably the most detailed and longest paragraph in this document. And then it goes on to say that the adoption is, the final paragraph, the birth parents relinquished the care and custody, consented to adoption, and the child's consented to the adoption. And then the document in the record isn't dated, except it says 2015. And there's a stamped signature. And there's a stamp file date of October 15, 2015. So it seems that's the first order of adoption. And then there's the later order in 2018, I believe, three, four years later, there's an order. Yes, that changes the date here and references the February 20, 2014 Nigerian adoption. So it seemed the state court was putting significance, legal significance, on the fact of a relinquishment of parental rights and a valid adoption in Nigeria. And that was a significant portion of how this decree was entered. And then later the date was amended. But to get back to Judge Hurwitz's question, if the Nigerian adoption was not valid or the relinquishment of parental rights, whatever date it occurred, did not occur before the adoption, does it matter whether the date is, you know, that whether we decide that the agency can accept or reject the amendment? Because that doesn't seem to be the issue. The issue seems to be whether the February 2014 adoption in Nigeria was valid. And to put a finer point on it, whether the agency's decision that it was not, is supported by substantial evidence. Not what decision would we make de novo, but was there substantial evidence to support the agency's determination that it was not? If I may, I see I'm running close to the end of my time. You can answer the question and then you're going to answer mine. Go right ahead. Okay, thank you. So I think in this case, the question about whether or not there should be some type of respect and deference given to the state court's non-protonic adoption decree is a important question. And whether or not it is properly based on evidence, let's say just the Nigerian adoption decree, or whether or not it's based on evidence of actual parent-child relationship that did exist, is a question for the agency to have answered. But again, we never got to that point because the agency refused to consider the non-protonic adoption decree at all under Matter of Wong. They said we reject it because the petition was filed after 16. And a very important part of this timeline that sometimes gets lost is that the adoption petition in Washington state was filed before any immigration benefits were pursued. It was a relationship that was initially pursued before immigration benefits. But after Troy was 16, she was 17. That's correct, Your Honor. And if I may answer your second question. I'm going to ask my questions now, because I think they're going to dovetail. And if you don't mind terribly, I'm going to interrupt and go ahead and ask my questions because we're well over time already. So you said several times that the first hurdle is the non-protonic hurdle and that the only question is that. But it seems to me the agency has given several different reasons here. So originally, in response to the application, this is the October 5, 2017 date at ER-64, the agency said they wanted proof that this was a bona fide adoption. And both of my colleagues have recognized that's another layer. Right. Then after additional submission at ER-95-96, there was a notice of intent to deny. And then the agency said there was, they didn't question the bona fide, that the bona fide adoption relationship existed. The agency said there was insufficient evidence that adoption took place before Joy turned 16. And specifically, they're talking about the Nigerian adoption. They said the proxy adoptions are not valid in Nigeria. It's a statement of law in Nigeria at ER-96. Then the family responded with this letter from Robert Cowan at ER-107 that explains, I think, maybe contrary to the position that you just took, but consistent with Judge Beatty's point, that the Spokane judge confirmed an earlier adoption, confirmed the Nigerian adoption, that the earlier adoption was initiated before age 16. I agree with Judge Beatty's view of the record as to the Spokane adoption, but after all, these parents were living on the first step of Robert Cowan says that Nigeria hasn't signed the Hague Convention. Nigeria does permit ex parte applications by one parent and adoptive parents need not be present. I think this is in response to the second reason that the agency gave for denying this, which is its understanding that proxy adoptions are not valid in Nigeria. So the parents have responded to that, which is really a question of law, right? And then the agency most recently denied the application because it thinks the adoption decree from Nigeria may not have been valid. So it's three different reasons, really. And I think to Judge Hurwitz's point, but maybe Judge Beatty made the same point, the documents weren't available until this became an APA claim. So then the entire administrative record comes forward. So you've been given three different reasons, yes, that precede this, the non-protonic problem. So there are three different reasons, but if I may, when the request for evidence was submitted, appellants responded, and then the agency did not touch that issue again. They did not make a specific determination on the bona fide relationship. When there was the November 19th... They're not questioning the bona fide relationship at that point. They've just moved on to say, well, I think as a matter of law, this can't happen in Nigeria. Then there was a legal description at ER 107 why it can happen, that the law there is different, and this may have been a valid procedure. And I don't see the agency questioning that. And all of that happens before we get to the consulate following up. I agree with Judge Beatty, absolutely. The mention of the divorce decree doesn't come from the Nigerian court. It comes from an error, if it's a Scrivener's error, I don't know.  At the consulate. But that wasn't double-checked. Nobody went back to figure out about these discrepancies. There's different dates. There's the same case number as Judge Beatty has indicated, but there's several other indications of irregularities. And I think that's what the agency is actually relying on at this point. And at that point, petitioners or appellants were not provided the opportunity to view that evidence at the agency level. So my question is, is it your understanding at this point, now we're on reason number four, this is the agency's reason, that they doubt the authenticity of the documentation? I think there is concern to the authenticity. But again, if we look to the board's decision, there is a yes or a no. Do you think that's why you're being told no? I don't think that's exclusively why, Your Honor. Okay, then I'll listen. We believe the petition was denied specifically by the board, if we look to the board's determination, because of Matter of Huang. They decided that we will not recognize a non-protonic adoption because it was lodged after 16. And what worry about the Nigerian adoption at all? Exactly. Matter of Huang, of course, we're talking about the initiation of the procedure. So if that's the answer, then the initiation of the procedure has to start in Spokane, as opposed to starting, as one would think it would have to, in Nigeria, because Joy's parents are biological parents, are living. Is that your understanding? Yes. Of the reason you've been given? That's my understanding. I think that there is many moving pieces here. There are a lot of notes in the record, and there are, I think, some distractions. But at the end of the day, the agency's interpretation of non-prone tongue adoption decrees is concerning. And this court has visited it. I still want to know what you'd like us to do. Maybe that's a better way to put it. Yeah, I think— We agree with you that the agency was wrong as a matter of law in categorically rejecting a non-prone tongue decree. What happens next? We would ask for a remand to the agency for an actual determination to be made on the bona fide nature of the petition and on the actual determination of eligibility. It's been pending for nine years. Evidence has been submitted. And when we look to the final report, we're never actually decided. So your position—I'm going to ask the government to do this, too—is that there never has been—if non-prone tongue decrees are recognizable, there never has been a determination that there wasn't an adoption before the age of 16. Correct, because they stopped— And the agency may be free to do that now, but it didn't do it yet. If matter of law is not applied, if this court uses the Ojo analysis from the Fourth Circuit— I ask you to assume that. Yeah. Okay. So I have some concern with that answer because I'm looking at the BIA's decision, specifically SCR 59. And it says, on appeal, petitioner again asserts that his amended adoption order, which modified the adoption date non-prone tongue to the date prior to beneficiary's 16th birthday, establishes that he has met his burden to prove he adopted the beneficiary prior to her 16th birthday. In the next sentence, however, it's explained to matter of tongue directs non-prone tongue state orders cannot be given as a fact if the petition was filed before the person turned 16, cites the case. Then it says in the very next sentence, here as noted by the director, the adoption petition was filed on October 15, 2015, beneficiary was more than 17, and the Nigerian adoption decree was not valid for purposes of establishing an earlier adoption date. Although the petitioner argues that the opinion he provided from Frances Adewale establishes the validity of the beneficiary's adoption by petitioner, it does not address the finding that the adoption decree was fraudulent. So clearly the agency has laid out what matter of tongue says, but doesn't just rely on that. It says the problem here is that there's a finding that the decree is fraudulent. So when you're arguing that they only relied on matter of tongue, or if we say that, you know, the amendment is fine, it still doesn't resolve the problem. And then to me, the issue was, is there substantial evidence for the finding that the decree was fraudulent? If I may very quickly, I understand we are well over time. Yes. In terms of making a determination on fraud, that is a very extreme determination that was never mentioned by USCIS. There was a question as to validity, but validity is a very different question from fraud. If the BIA wanted to make a determination on fraud, the proper procedure would have been to remand and allow further fact-finding. Well, whether they call it fraud or not, I was trying to march through, because I think you're focusing on the matter of tongue. I think you've done that repeatedly. And I agree with Judge Beattie that there's these, there were actually, I think there've been four different reasons given, but I don't see the agency pushing back on, you know, one by one by one. As I read the record, the Clevelands have overcome those earlier issues, including this question about as a matter of law, what is or is not required in Nigeria, right? And so then we get down to, and that was the point I was trying to make, I think at the end of the day, the agency's relying on questioning the validity of that decree, right? And so for the reasons Judge Beattie just mentioned, and for the chronology that I just walked through, but that's why it seems to me to be very difficult, because the consulate made the mistake, at least the most egregious mistake, and I don't see that was ever followed up on. We're going to give you a chance to, I'll put two minutes back on the clock. Thank you. You are spectacularly over your time. So please step aside, and we'll hear from the government. And by the way, that was our fault that you're over their time, but it's a confounding record. Thank you. Good morning, your honors. May it please the court. Molly Smith for the defendants in this matter. I believe the court is picking up on the exact issue, that there's one ultimate question that's being presented for the courts. I don't think there is. Do you agree that the agency has given four different reasons for denying this? Over time, different reasons were identified throughout the process. At the end of the inquiry, when a final denial is entered, there's really only two issues that are being identified. Okay. Just hold that thought if you would, please, Ms. Smith. So I've read this record, and it's a little, I think we're all struggling with it, but not for lack of trying. I promise we're leaning in hard here. You've got our attention. This case certainly does. But when the agency first says, hey, we need to know that this is a bona fide adoption, at that level, and I think we all recognize that's a very important part of the process. It's not sufficient to just have a legally binding adoption. So then it comes back with a notice of intent to deny for a different reason. It says you can't do this as a proxy adoption in Nigeria. And I don't see the agency pushing back on bona fide adoption anymore. That's correct. Okay. That's helpful. So then it says you can't have a proxy by adoption in Nigeria, and they come, Cleveland's come back with their expert who explains he thinks they can. Is the agency now conceding or at least not fighting that point? The agency's not fighting that part. That is not one of the reasons that's given in the ultimate final denial. Got it. Okay. So then we move on to the next part, and that kind of gets us to where we are, right? Which is that this would, the Nigerian adoption decree, were it valid, then I think, I'm not sure you'd have an argument left. Correct. If the Nigerian adoption decree was determined to be valid, then we would have proof of an adoption that occurred before age 16. Okay. Can you just tell me then, do you read, this is very helpful, do you read the Spokane decree the way Mr. Cowan reads it, which is that the Spokane judge relied on the preexisting Nigerian decree? I don't know that we can say that for sure because we don't have in the record what information was presented to the Spokane County Court in order for the Spokane County Court to reach that decision. I know plaintiffs have argued that the Spokane Court reached a decision about the validity of the underlying adoption, but we just, we don't have the rest of that file from the Spokane County adoption proceedings in the record to understand what information was being presented to the court. I do believe at that point in time when the Clevelands go to Spokane County Court and are initially pursuing that adoption in Spokane County Court, I don't believe at that time they had been made aware of USCIS's concern about the legitimacy of the Nigerian adoption. So there's no reason that that issue would have been flagged or presented for the Spokane County Court's resolution. That's my understanding of the chronology as well. And so we are where we are. And we take, if there's a concern about the legitimacy of the document, of course, we take that very, very seriously. But then we get back to, they didn't have, the Clevelands didn't have what the agency was looking at, not until they filed an APA claim. It's correct that they did not have in-hand copies of the actual document, such as the letter from the Nigerian court official. But in the second notice of intent to deny when USCIS is putting the Clevelands on notice about its concern about the validity of these documents, it doesn't turn over copies. It's not obligated to turn over copies, but it does explain in detail what the process was. It explains that USCIS initiated an overseas verification process through the U.S. consulate in Nigeria, and that a consular official took these documents to the Nigerian court and that the Nigerian court responded with a letter from the court official in Nigeria explaining that the documents provided did not emanate, is the language from that letter, did not emanate from the court. And thus USCIS was concerned or was intending to deny the application in part based on this finding that the Nigerian adoption document was not a legitimately issued court document. It's essentially a fake. Please, please. Let me, let me go back again. And I want to, the agency says under Wong, your Spokane, we don't care about your Spokane decree. It doesn't make a darn bit of difference to us. And so we'll now look and see if there's a Nigerian decree and they determine that there isn't. We with each other so far? Yes. Let's assume the first ground is wrong. Let's assume that Wong is incorrectly decided and that we agree with, is it the fourth circuit? I think that or is the correct rule. And indeed, I think we've hinted at that before in the, in the decision that was vacated. What happens then? I think that the issue that was raised in the, Joe case in the fourth circuit and the issue that was raised in the impasse decision of this case or this circuit before it was later withdrawn is ultimately not as relevant now because we're not in a Chevron deference standard anymore. You can argue why Wong is correct if you want to, but that's not the question I'm asking. Let's assume that Wong is incorrectly decided and that a non-proton decree should not be categorically rejected by USCIS simply because it is non-proton. What's your position of what happens now if we were to rule that? Our position is still that the adoption decree and the non-proton order in this case still would not establish that Joy had been adopted. Excuse me, which adoption decree? That's right. I apologize. The non-proton adoption in Spokane. So the Spokane County adoption decree still would not establish that Joy had been adopted while under 16. Because the fact that the non-proton is assuming that the court is reaching a finding that the Nigerian court adoption. Well, see, that's my that's my problem. So let's assume there was no Nigerian adoption, not that it was fraudulent, but just for some reason it never got done correctly. There is a non-proton decree, which under my view of the law should be recognized. Now, you can determine that there really wasn't a valid adoption before the age of 16. Nobody disputes that. Your friend says you're perfectly capable of conducting such an investigation. But it seems to me you haven't done that yet. You haven't found that there wasn't a bona fide adoption before the age of 16. All that you found is that there wasn't one in Nigeria. So the agency did conclude that there was not sufficient proof of an adoption that occurred before age 16. But the problem with that is the agency concluded that because it first said under Wong, we can't count a non-proton decree. So throw that out. And now we get to whether there was a valid adoption in Nigeria. And we determined that there wasn't. Now, I'm asking you to assume that one can consider the non-proton decree. Your friend says, I think quite correctly, non-proton decree doesn't end it because you're always able to go back and say there really wasn't a valid adoption at an earlier date because she didn't live there or she was someplace else or X, Y, or Z. But you haven't done that, have you? That's not what the agency decision is. That's right. That's, yeah, that's, that's, that's not what the agency did not hold. There was not a valid adoption under if the non-proton decree can be recognized. I'm sorry. Sure. This way it's just beginning. The agency found two things. One is we can't pay any attention to the non-proton decree. Wong tells us we can't. And we can't confirm that there was a Nigerian decree. Now, I'm now asking you to take you to a world where you have to pay attention to the non-proton decree. You're still able, as your friend says, to determine there really wasn't a valid adoption before the age of 16. But you haven't done that, have you? The agency hasn't done that. Correct. But that's for this court's review. And I think that that specific issue is exactly what's addressed in the Carino case from the Ninth Circuit. The agency didn't make that finding. How can we review it? I can review the agency's finding that there may be substantial evidence to support the agency's finding that the Nigerian decree is not valid. But I don't see any finding by the agency, and that's why Judge Christin was taking you through this, I think, that there wasn't a bona fide adoption before the age of 16. The bona fide adoption and the adoption while under age 16 are two separate issues. So there's the agency has not made a finding that there was no bona fide adoption here. Right. The agency made a finding that it didn't occur under the age of 16. The agency's finding is that she was not adopted while under the age of 16. That's right. And I'm saying... Or that it wasn't initiated before she was 16. The statutory language requires adoption while under the age of 16, and that's ultimately what the agency's finding is. Well, I thought your case law said initiated, doesn't it? After Huang, don't you get to, it has to have been initiated prior to age 16? The Huang standard is a BIA decision, and so that's the standard that the agency is applying at the agency level. But as this court is reviewing this legal issue de novo, the language that comes from the INA itself, the statutory language, requires adoption while under the age of 16. But that's how you've interpreted the statute, yes? That's how the agency interprets the statute. Well, you represent the agency, don't you? So this isn't a trick question. I just want to make sure that we're communicating. That's how the agency has applied this, yes? Yes, that's correct. Okay. So I'm still stuck, and I'm not sure... We're missing each other, and that's why I'm trying to figure this out. Throw out the Nigerian adoption. Let's assume a Nigerian adoption never occurred, but we have a nunk-pro-tunk order from a state court that says she was adopted at a time before she was 16. And I'm telling you to assume we have to... We can't just throw out that order under Huang, because I think Huang was incorrectly decided. What do we do now? I think the court still concludes that she was not adopted while under the age of 16 as a matter of law. Because that's exactly what the Carino case spells out. So in the Carino case, there's a similar issue of a federal immigration law that requires a certain action to have occurred while a child is under the age of 18 in that case. And what happens is the individual grows up. This is an issue related to the custody arrangement between his parents. And the removal order. We've read that case. It really feels like a stretch here, given your concession, and I appreciate your candor, that that's not how the agency has applied this. Can I ask maybe a bit of a different take on this? Maybe you're thinking about this differently. But it seems to me in a situation like this one, where Joy's biological parents continue to live, that the initiation of an adoption has to start with their consent. I believe that would be the case. I'm not sufficient enough of an expert on adoption law. I'm not either. I'm not either. But it just seems to me, particularly because we have this, I think, unchallenged opinion letter from Mr. Cowan, that it may very well be that the Spokane court was in a position to rely on the Nigerian decree at least to establish parental consent. We don't have that in the record to know either way. Well, why don't we have that in the record? We do have that in the record. We have the adoption order that was entered. We don't have the information that the plaintiffs presented to the Spokane County Court. It would help me a lot if when you say adoption order or decree, you tell me which one you're talking about. You mean Spokane, and you don't know whether the Spokane judge incorporated or relied on the Nigerian adoption? Correct. We have a copy of the order from the Spokane County Court. We don't have copies of information that was presented. Okay. I appreciate that. Mr. Cowan says otherwise. He thinks that the judge in Spokane clearly relied on the Nigerian decree. I read the record the same way Judge Beatty does. I think they did. But it just seems to me that if we're looking at part of the BIA's own application of this statute, and particularly in a circumstance where the agency's not pushing back on whether this is a bona fide adoption, usually that's the hurdle, right? So this is a little bit upside down and backwards in that sense. But in terms of a clear record that there was an adoption process initiated before Joy was 16, it seems to me we have that. Except at best, the government's got this argument at the end of the analysis. It's the most recent one that you've been very candid about relying on. Now there's a concern about whether those records were legitimate. I'll just use the word legitimate. And I think that would need to be a concern about the parental consent as well as anything else, like a decree that's in Nigeria. Would you agree with that? Yes. Because to the government's understanding, this entire Nigerian adoption file appears to not have been a real court order, a real court file. So we do have consent forms from Joy's Nigerian parents in the administrative record. That's part of this Nigerian adoption file that is determined to not have been a legitimate Nigerian court order. Well, when you say it's not I don't know if I agree that the record says that. It's the same case number. I just have questions about what this record shows us from Nigeria, particularly because the most egregious error is one committed by somebody from the consulate. And Cleveland's didn't have all of that, as you've again candidly conceded. So I'm not sure that enough has been done for the agency to be able to say that they didn't have parental consent established in Nigeria. If they did, it seems to me that's the initiation of the adoption process. Or at least I put that out there as plainly as I can, so you can tell me what I'm missing or why I'm wrong. So the determination that USCIS has made here is that the Nigerian adoption decree is not a valid, legitimate court document. And that's- Because if it were, we'd be done. Yes. Right? Because Nigerian decrees count. Right. So I appreciate- We understand that. I appreciate the legitimacy issue. I think we've all raised that and been really clear that's a very serious point, okay? But there's another issue. And I'm trying to get at that, which is that if we didn't have that concern, and I don't know if we will or not, because it seems to me that I'm not sure the agency's done enough to explore that. That's just me. I'm only one of three votes. But even setting that aside, there's this other issue, which is whether or not the agency, by its own read of the statute, would acknowledge that this process, if we have a valid consent, even just a valid consent in Nigeria, we have the initiation of an adoptive process prior to Joy's 16th birthday. But we don't know if we have valid consent from the biological parents. That's going back to- That's what I conceded at the outset of my question. The legitimacy of those documents is a point you've staked out. I get that. But if that is resolved, then it seems to me, in that universe, which we're not in yet, certainly not today, in my read, we would have the initiation of an adoption process, a timely initiation, because it has to start, I think, with the biological parents' consent. But we don't know when that happened because we don't have a valid- So you're reverting to the other issue, and if that's your best answer, which I appreciate and I'll take it for that. Can I ask you some questions? The consent issue is really troubling. So in the record, we do have the declarations from the biological parents. And I'm looking at SCR 793 and 794, and they're pretty much identical with the change of one being the father, one being the mother. They are both dated February 25th, 2016. And there's a notary stamp that's also dated February 25th, 2016. So here are the consents. They're from 2016. This is more than two years after the purported adoption happened on February 20th, 2014. That's correct. That's in the record. Is that in the agency determination? Is there some manner in which their determination that the Nigerian adoption is not valid, or at least it doesn't emanate from the court, is based on the dates of the purported consent? That is part of the analysis, and I believe this gets- Is it part of the analysis or just part of the record? Where do I find it in the agency's analysis? It's part of the record. And so I think it's important to highlight that this Nigerian adoption file is in the administrative record in two different places, and that is significant. Because starting at the version that's at 1 SER 283, that is a copy of the Nigerian adoption file that Charles submits directly to USCIS. It's attached to a declaration from Charles Cleveland that says, here is the copy of my Nigerian adoption file to establish that I adopted this child in Nigeria. Later on, there's a second set of the Nigerian adoption file records that's starting in the record at 4 SER 1016. That's the set of documents that is sent through the overseas verification process. So that's the set of documents that is covered with the consular official's report of investigation. There's the letter from the Nigerian court official, and then there are copies of the Nigerian adoption file paperwork, which at this point have the initials OVR stamped on the bottom. That is an indication that these are copies of the documents that were sent as part of the overseas verification report process. There's something else in the record too, isn't there? I may be recalling this wrong, but there's a declaration or affidavit from the birth mother that says, gee, I thought I did give my consent way back when. Correct? That's part of that set of documents. Right. Notwithstanding whatever this one says, 2016, I thought I gave consent earlier. I don't know that that's what that declaration says. It does say I thought I gave my consent back at the time. But just to be The copies that I'm looking at start at 4SER 1016. I think what we're looking at, because we both have it on our screens, we're just comparing it, is SCR 797. And this has at the top in the High Court of Lagos State, in the Judicial Division, et cetera, appears to be, or at least it's intended to appear to be that it's from the court. It's in the matter of the adoption. Let's destroy his name, her date of birth, the file number is the same. And then it says there was a motion to correct the date. Coming for the Honorable Court for the correction of the date, 22 January 2015, should be 22 January 2014, right? And then this is dated March 24th, 2016. So the problem I'm having is the document I was just referencing with the actual consents are not dated January 22nd, 2015. They're dated March 24th, 2016. I'm sorry, March 25th, 2016, right? So we have two consents that are from, excuse me, I'm saying this all wrong, which is this making it more muddled. The two consents are at SCR 793 and 94, and they're dated February 25th, 2016. Then there's a correction to those consents, which is dated March 24th, 2016, but it purports to correct the date from January 22nd, 2015 to January 22nd, 2014. The declarations aren't dated January 22nd, 2015. This was a problem I raised with your opposing counsel. How does all this work? Because the consent seems to be a serious issue. I haven't heard anybody argue that there could be a valid adoption under Washington law without consent of living birth parents. And yet here's a correction that doesn't correct the right date. It's in our record, so I'm assuming it's in the agency file. Is this correct? Yes, this is correct. Is it part of the agency's determination that there's not a valid adoption underlying the state decree? It's part of the determination that the Nigerian adoption was- Right, but not that the Washington decree. That's why I keep asking the question, and you've been answering it honestly, so I want to be clear about this. You reject the Washington decree ab initio because it's nunk pro tunk, correct? We reject it as far as it establishes an adoption- Right, because the adoption date was earlier than the date of the decree. Because the adoption date is retroactively dated to the date of the Nigerian adoption. No, no, no, no, no, no. Wong doesn't say we get to reject these if the Nigerian decree is no good or if an out-of-state decree is no good. Wong says nunk pro tunk, forget it. We don't look at nunk pro tunk decrees. You agree? I agree that that's what Wong says, but this- And the agency could not have been clearer on that point. Forget about the Washington decree. It's nunk pro tunk. It may be based on gobbledygook. It may be wrong, but we don't care because it's nunk pro tunk. So now, and I've asked you this question now three times. You've said it the same way every time, but I want to make sure we understand this. Now, we'll go and look and see whether you have a valid Nigerian decree, and we find you don't. Now, what I'm struggling with in this case is let's assume you're right about the second thing, that there's substantial evidence that there wasn't a valid Nigerian decree. You all admit we don't know what evidence was in front of the judge when he entered the nunk pro tunk decree. And if I have to recognize that nunk pro tunk decree, you may be able to determine that it really wasn't a valid adoption on that date, but you never did that, did you? You, the agency. The agency's decision was based on its application of the matter of Wong test. Okay. So that's my problem. So that's why I think what I'm asking you really is the same question I asked at the end to your friend. If Wong is wrong, don't we have to send this back? But we agree with you that there was no Nigerian decree. Don't we have to send this back for you to determine whether there was a bona fide adoptive relationship? I don't think so because this court is obligated to engage in a de novo review of the legal determination here. So matter of Wong is what was applied at the agency level. So you're asking us to find it as a matter of law that the Washington decree was invalid? The USCIS did not find it as a matter of law that the Washington decree was invalid. Well, no, because you just rejected it on the basis of Wong. It found that under federal law that it did not sufficiently establish the temporal requirement that is imposed by federal law. See, but that is the problem. We're missing each other. Forget the temporal. So I'm on the verge of putting time limits on my colleagues. One last, one last. Forget the temporal requirement. Let's assume you lose on the earlier. Let's assume you win on the issue of whether or not the Nigerian decree has been shown to have been valid. You've never made a determination that about whether there was a bona fide adoption at an earlier point. Don't you have to go back and do that? USCIS did not reach a determination that there was not a bona fide adoption here. USCIS is not challenging the bona fides. You've been very candid about that. Yeah, we've been very candid about that. Can I ask you a question? Hold on. Hold on. If I just, are you done? I'm done. Okay, go right ahead. Okay. So Judge Hurts has been asking you about the agency's decision, USCIS decision, but aren't we reviewing the BIA decision? That's correct, yes. Okay. And the BIA said, here's a matter of Wong. They've purported to amend the decree, and it goes on to say what I quoted before was that doesn't address the fact that there's a determination that the adoption decree was fraudulent. The Nigerian adoption decree was fraudulent, and petitioners not submitted sufficient evidence to overcome that finding. So the BIA decision reaches the very issue that Judge Hurts is calling out. I think what he was suggesting in his questions was that the USCIS officers were listing various reasons in their denial, including concerns about the validity of the decree, the Nigerian decree. But then we have a BIA decision that explicitly says, even if we set aside matter of Hong, under the timing here, that doesn't address the validity. And they, I think, decide based on the fact that they've concluded that the Nigerian decree is either not valid or that the petitioners haven't shown that it's valid, and that there's substantial evidence to support that. I think that's correct. The resolution of the issue about the validity of the Nigerian adoption decree has to come first, because the issues associated with that issue are then relevant to determining whether or not the Spokane adoption was sufficiently initiated while under the age of 16. I agree. I think it has to come first. So let me ask you a follow-up question, and then this is my allotted follow-up question, and then we'll stop. But not because it's not a very important case. And I hope if you've got at this. These are very important issues for the people involved. There's also very important human trafficking concerns. So we take this very, very seriously. In this case, I want to start by just underlining the agency is not contesting the modified nature of this adoption, the loving relationship. But oddly, we're looking at the legality, which is usually the first hurdle. So I agree with you that that's where this starts. And the record is confounding, because we have these parental consents, one of which I think was, by my read, certainly executed before the initiation as the first step of the adoption. Judge Beatty has just looked at this document with you, which we have up at 3 SER 797. This is the correction. And as she indicates, this document begins with that this January 2015 date should be the January 24 date. That that goes on to say from this judicial officer that the sworn declaration of consent to adoption was considered and referred to by this court at the same time it entered the adoption decree on the 20th of February 2014. And I'm putting that together with Mr. Cowan's representation. I understand to be licensed to practice there that these notaries for this type document are, I think he uses the word notoriously inaccurate or incorrect. So my question is whether or not there's been enough investigation about the legitimacy of this parental consent. I just want to know, does the record show us anything? Where's the best indication I have in the record that the agency followed up on the consent? Yes, that is in the set of documents that is, again, the Nigerian adoption file that's presented for SCR. Do I look at SCR 1016? Okay. And unfortunately, the bottom of the page is blacked out. So I can't give the exact. That tells me I didn't realize there were two sets or maybe I'll just verify that I'm looking at both sets because I have the other one pulled up. And I think you've answered anything else on that. Just to make sure that I've clarified. Yes, that the order of correction is one of the documents that is in the file that was presented for overseas verification that then leads the Nigerian court official to issue the determination that these were not legitimate court documents. Okay. And is that the document that's called order of correction of the date of notary and the sworn declaration of consent to adoption? That's the document? Correct. Okay. Can you give me the record site again? Yes. You've said there is a packet of documents that were submitted that are the Nigerian documents. What is the record site for those documents? That's the set that's at four SCR 1016. 1016 is the beginning of this packet of documents. That's the report of investigation, which is then followed by copies of the Nigerian adoption documents, which have the word or the acronym OVR stamped on the bottom of those pages. We understand. I want to thank you for your advocacy again, 14 minutes over. So that's something of a record. Thank you. I said I'd put two minutes on the clock. Rebuttal. Thank you. We appreciate your help very much. Counsel. Thank you. Now, if I may thank you to the court for taking such time and extensive investigation into this record. I think if anything has become clear throughout this discussion, it's that further fact finding is needed. In discussion of the Nigerian adoption, there is a substantial evidence question. The evidence must compel the conclusion that the agency reached. And there is a dispute here. That's not the standard for substantial evidence. It would have to compel the opposite conclusion. We would affirm their decision unless the evidence compels the opposite conclusion. I think you misspoke. Yes. Thank you. All right. That being said, appellant's position is that the agency did not engage with two specific findings. One, whether or not consent was actually provided when it determined that the Nigerian adoption might not be valid. USCIS focused on whether or not the decree came from the high court for the and right. And so that is a factual question that the agency should investigate further. But number two, as to the adoption at the state of Washington, as Judge Hertz hit on there, there wasn't an investigation as to whether it was made exclusively on the Nigerian adoption or whether it was made in consideration of experts said it was based upon the Nigerian adoption. It was a consideration. Yes. But was it exclusive is a question. I read that differently, but we'll reread it. Let me just ask you this because you're out of time. Is there any, do you know of any cases where there has been the procedure that I've just described where an adoption, an overseas adoption is initiated while parents are still living and that that that consent or the initiation of the overseas process is deemed the initiation of the adoption stateside? Let me just ensure I understand your question. I want to know if there's any other examples of the BIA looking at an overseas adoption and treating the over the initiation of the overseas procedure as the initiation of the adoption of a subsequently entered U.S. to ensure and double check that question. Have you looked for that? No. Okay. Thank you. Okay. One just very, am I right in thinking that one SCR 59 is the BIA order? Yes. Yeah. Good. Okay. Because I kept hearing reference to things that I don't think are in it. So I wanted to make sure. Now you're over time. We're going to stop. Appreciate your patience with our questions and helping us with this very important case. We're going to take it under advisement. We'll be very careful with it and we're going to go on to the next case on.
judges: CHRISTEN, HURWITZ, BADE